IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 2:10-cr-03164-RB |
| FRANK MONTOYA, | ) ) ) | |
| Defendant. | ) ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND
ORDER DENYING DEFENDANT'S MOTIONS TO SUPPRESS EVIDENCE**

THIS MATTER comes before the Court on Defendant's Motion to Suppress Evidence No. One and Memorandum of Law in Support of Motion to Suppress (Docs. 30 & 32), filed December 23, 2010, and Defendant's Supplemental Motion to Suppress Evidence No. One and Incorporated Memorandum of Law (Doc. 56), filed April 4, 2011.  Having held an evidentiary hearing on this matter, carefully considered the parties' arguments, and otherwise being fully informed, the Court DENIES Defendant's Motion to Suppress and Supplemental Motion to Suppress.

**FINDINGS OF FACT**

1. On June 23, 2010, Gary Montoya, Defendant Frank Montoya's son, was stopped by Officer Michael Stanton of the Roswell, New Mexico Police Department for a traffic violation. Officer Stanton approached the vehicle and made contact with the driver, Gary Montoya, who appeared nervous and requested that Officer Stanton let him go with a warning.

    Standing next to the vehicle, Officer Stanton called dispatch and performed a radio check on Gary Montoya. Dispatch informed Officer Stanton that Mr. Montoya's driver's license had been suspended.

2. Officer Stanton advised Gary Montoya that he was placing him under arrest for operating a vehicle with a suspended license and indicated that the vehicle would be towed and inventoried. Gary Montoya stated that the car did not belong to him, that the officers could not search it, and that anything they found in the vehicle did not belong to him.

3. After placing Gary Montoya in wrist restraints, Officer Stanton and Detective Mahone performed a search of his person and discovered a substantial amount of cash: $1,135 in $100 bundles in a Crown Royal bag in his back pocket, $50 in his left, front shorts' pocket, and $189 in his wallet.

4. Next, Officer Stanton began an inventory of the vehicle. Upon opening the center console armrest, he observed the butt end of a handgun grip sticking up out of the console. Officer Stanton was aware that Gary Montoya was a convicted felon, and at this point, he terminated the inventory search and secured the vehicle in anticipation of obtaining a search warrant.

5. At some point during the search, the owner of the vehicle came onto the scene. Officer Stanton inquired whether the gun belonged to him. The vehicle's owner indicated that he owned a gun, but that it was at his residence, not in the car.

6. Officer Stanton transported Gary Montoya to the police station and started the booking process. As part of this process, Officer Stanton verified his address. Mr. Montoya's New Mexico identification card stated that he lived at 609 Redwood, Roswell, New Mexico. Additionally, when asked for his address, Mr. Montoya replied that he lived at 609 Redwood. Officer Stanton further verified the address through the police computer system.

7. Officer Stanton obtained a search warrant for the vehicle, and a search was conducted at approximately 11:45 a.m. on the morning of June 24, 2010. During the search, officers encountered a Walther P99 .40 caliber handgun, twenty-three .410 bore shotgun shells, and three 12 gauge shotgun shells. A check of the National Crime Information Center (NCIC) database revealed that the handgun had been stolen from Hobbs, New Mexico in January 2010.

8. After booking all relevant items seized from the vehicle into evidence, Officer Stanton began preparing an affidavit for a search warrant for the premises at 609 Redwood. Through his training and experience, Officer Stanton was aware that persons who possess firearms or ammunition in their vehicles often possess firearms or firearms-related items at their residences. The affidavit indicated that the scope of the search would be limited to firearms, firearms-related items (holsters, cleaning supplies, and ammunition), and any documents relating to the ownership, sale, or transfer of firearms.

9. Despite the large quantity of cash that was found on Gary Montoya during his arrest, at the time Officer Stanton was completing the search warrant, he did not believe he had probable cause to search for evidence of drugs or drug distribution.

10. After completing the warrant application, Officer Stanton contacted the district attorney's office to review the warrant application and affidavit, and then presented the search warrant application to New Mexico District Judge Shamas, who granted the warrant for the premises at 609 Redwood.

11. With the search warrant in hand, Officer Stanton contacted Division Commander Brown to request assistance in its execution. A team of officers was assembled, which included, among others, Officer Stanton, Commander Brown, Detective Kuepfer, and Agent Mason.

Commander Brown and Officer Stanton then conducted a briefing of the officers to inform them of the purpose of the warrant and to provide the officers with their duty assignments.

12. At the briefing, Commander Brown informed Officer Stanton that, upon the execution of the warrant, Officer Stanton should be prepared to amend the warrant to expand the scope of the search to include narcotics. Commander Brown indicated that officers from the department had been conducting controlled buys at the house, and it was therefore likely that they would also encounter narcotics during the search.

13. Detective Kuepfer and Agent Mason, who were part of the search team, had been working with a confidential informant who had performed two controlled buys of cocaine (2–3 ounces each) from Defendant Frank Montoya on May 20, 2010 and June 3, 2010. During a debriefing following one of the buys, the confidential informant indicated to Agent Mason that Frank Montoya kept the cocaine in the clothes dryer.

14. The team of officers executed the search warrant for 609 Redwood at approximately 4:30 p.m. on the afternoon of June 24, 2010. Defendant Frank Montoya and his brother Jerry were the only people present at the residence at the time of the search. At the beginning of the search, Frank Montoya informed the officers that Gary Montoya did not live there.

15. During the search, Officer Stanton found a clear glass jar in one of the kitchen cabinets containing what he suspected to be marijuana. Agent Mason and/or Detective Kuepfer then found a clear plastic baggie containing a white powdery substance in a clothes dryer also located in the kitchen area.

16. Based upon the amount of cash that Officer Stanton found on Gary Montoya at the time of his arrest, in addition to the suspected marijuana and cocaine found during the search of the

premises, Officer Stanton now believed Gary Montoya to be involved in the distribution of controlled substances. At this point, the search was temporarily suspended so that Officer Stanton could request an amendment to the search warrant, expanding its scope to include evidence of controlled substances, paraphernalia, financial documents, records, and any items that could be used in the manufacture, distribution, or protection of controlled substances.

17. The amended search warrant was granted by New Mexico District Judge Crumero. The officers continued their search, seizing marijuana, cocaine, cash, and several kinds of ammunition.

## CONCLUSIONS OF LAW

1. Under *Illinois v. Gates*, 462 U.S. 213, 238 (1983), before issuing a search warrant for a particular premises, the issuing magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

2. A magistrate's probable cause determination should be given "great deference" by the reviewing court. *Gates*, 462 U.S. at 236, 240. "Once a magistrate judge determines probable cause exists, the role of a reviewing court is merely to ensure the Government's affidavit provided a 'substantial basis' for reaching that conclusion." *United States v. Biglow*, 562 F.3d 1272, 1278–79 (10th Cir. 2009).

3. To establish probable cause to search a particular premises, officers presenting a warrant to a magistrate judge for approval must present evidence establishing a nexus between the place to be searched and the suspected criminal activity or contraband that officers hope to

seize. *Biglow*, 562 F.3d at 1278–79; *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005); *United States v. Rowland*, 145 F.3d 1194, 1203–04 (10th Cir. 1998). Whether such a nexus exists is, of course, dependent upon the facts of each particular case; however, the Tenth Circuit has established several factors relevant to the nexus analysis: "(1) the type of crime at issue, (2) the extent of a suspect's opportunity for concealment, (3) the nature of the evidence sought, and (4) all reasonable inferences as to where a criminal would likely keep such evidence." *Biglow*, 562 F.3d at 1279.

4. In making a nexus determination, "magistrate judges may 'rely on the opinion' of law enforcement officers 'as to where contraband' or other evidence 'may be kept.' " *Id.* (quoting *United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997)). In the case at hand, Officer Stanton stated in the affidavit that, in his training and experience, people who possess firearms in their vehicles, also possess firearms-related items in their place of residence. Additionally, Officer Stanton indicated in the affidavit that he knew Gary Montoya lived at 609 Redwood because this was the address listed on his New Mexico identification card and because Gary Montoya stated this was his address during the booking process. Accordingly, the Court concludes that the affidavit for the original warrant established a nexus between the place to be searched, 609 Redwood, and the suspected criminal activity—the unlawful possession of guns by a convicted felon.

5. Furthermore, after reviewing the affidavits for the warrant and amended warrant in the present case, the Court concludes that they provided a substantial basis for the magistrates' determinations of probable cause to search the house for firearms and firearms-related items, in addition to narcotics and items related to the distribution of controlled substances. Based on the affidavits, there was a fair probability that these items would be found on the premises

at 609 Redwood.

6. In certain circumstances, however, even if a warrant appears to be facially valid, it may be challenged based on an alleged misrepresentation by the affiant in the affidavit. *Franks v. Delaware*, 438 U.S. 154 (1978). When presenting such a challenge to the Court, the defendant must first make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause." *Id*. at 155–56.

7. Upon making such a preliminary showing, the defendant is entitled to an evidentiary hearing on the matter, at which the defendant must then establish by a preponderance of the evidence perjury or a reckless disregard for the truth on the part of the affiant. *Id*. at 156. Although the Court concluded at the evidentiary hearing in this matter that Defendant had failed to make a preliminary showing of a false statement in its motions to suppress, it permitted defense counsel some latitude to present additional evidence to attempt to show perjury or a reckless disregard for the truth with regard to Officer Stanton's statement that Gary Montoya resided at 609 Redwood.

8. Following the evidentiary hearing, however, the Court concludes that Defendant failed to produce any evidence demonstrating an intentional or knowing false statement, or reckless disregard for the truth, on the part of Officer Stanton. Accordingly, Officer Stanton's statement will stand, and Defendant's challenge to the warrant based on misrepresentation must therefore fail.

9. As the Court concludes that the affidavits for the original and amended warrants were sufficient to establish probable cause and upholds the magistrates' probable cause

determinations, it is not necessary for the Court to address the good faith exception to the warrant clause under *United States v. Leon*, 468 U.S. 897 (1984).

## ORDER

**WHEREFORE**, the Court hereby **DENIES** Defendant's Motion to Suppress (Docs. 30 & 32) and Defendant's Supplemental Motion to Suppress. (Doc. 56.)

_____
**ROBERT BRACK**
**UNITED STATES DISTRICT JUDGE**